IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 16-cv-02664-RPM

JAIME NOLAN DURAN,

    Applicant,

v.

LOU ARCHULETA, Warden of Fremont Correctional Facility, and
CYNTHIA COFFMAN, Attorney General, State of Colorado,

    Respondents.
_____

ORDER DENYING WRIT OF HABEAS CORPUS
_____

    Jaime Duran is serving a sentence of life in prison having been found guilty of First Degree Kidnapping and other crimes by a jury in the District Court, El Paso County, Colorado in March, 2007. In this Application for Habeas Corpus under 28 U.S.C. § 2254 Duran seeks to vacate that conviction alleging that it was the result of ineffective assistance of trial and appellate counsel in violation of the Sixth Amendment to the United States Constitution. The particular failures of adequate performance were alleged in a motion for post-conviction relief under Crim. P. 35(c) filed by present counsel which was denied without a hearing by an order entered on May 2, 2013, by District Judge Thomas Kennedy, who was not the trial judge.

    That order was affirmed on appeal by the Colorado Court of Appeals on October 8, 2015.

    The motion included a lengthy and detailed account of the facts of the case from Duran's perspective with excerpts from trial transcripts. There was a stipulation

agreeing to those asserted facts for the purpose of determining whether an evidentiary hearing would be required.

The appeals court ruled that because counsel did not include the trial transcripts in the record on appeal the presumption of regularity applied and because Judge Kennedy wrote in his order that "all of the alleged errors were a matter of record" and the appeals court presumed that the record included trial transcripts. There is no indication that the district judge had read the transcripts. The order apparently relied on records other than transcripts and it was agreed that the court would consider the defendant's summary included in the motion.

The Colorado Court of Appeals referred to the rules of appellate procedure in its order that counsel's failure to include trial transcripts prevented review of the district judge's findings and conclusions.

The respondents assert that Duran's application should be dismissed because of procedural default.

In *Coleman v. Thompson,* 501 U.S. 722 (1991) the Supreme Court held that respect for state courts required the denial of habeas corpus by a federal court when the state appellate court denied review because the notice of appeal was filed late. That denial was an application of a procedural rule by the Virginia Supreme Court.

The United States Supreme Court reviewed its precedents establishing the doctrine that claims of Constitutional error in habeas corpus proceedings will not be addressed if they were rejected by a judgment that rests on independent and adequate state procedural grounds.

The Court recognized an exception to that doctrine in *Martinez v. Ryan,* 566 U.S. 1 (2012) holding that a federal habeas court may excuse a procedural default of an ineffective assistance of trial counsel claim when post-conviction counsel failed to raise it and the claim could not be asserted on direct appeal.

That qualification of *Coleman* was narrowed by the Court in *Davila v. Davis,* 137 S. Ct. 2058 (2017) holding that ineffective assistance of post-conviction counsel does not provide cause to excuse the procedural default of claims of ineffective assistance of appellate counsel because there is no constitutional right to post-conviction counsel.[1]

The procedural default doctrine is related to the statutory requirement that the applicant must exhaust the remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A).

The Colorado Court of Appeals relied on C.A.R. 10(b)(c) in denying review of Judge Kennedy's ruling for the lack of trial transcripts.

The failure of post-conviction counsel to comply with that rule could not be raised as ineffective assistance under *Davila*.

The claims of ineffective assistance of trial counsel in this application have been procedurally defaulted and must be dismissed.

Because of the severity of the sentence imposed on the conviction for first degree kidnapping and the failure of Judge Kennedy to grant an evidentiary hearing or

---

[1] Duran did not argue *Martinez* in his briefing. Respondents cite both *Martinez* and *Davila* in the submission of supplemental authority and these cases were discussed during oral argument.

The ineffective assistance of counsel during collateral post-conviction relief is expressly excluded as a ground for habeas relief by statute. 28 U.S.C. § 2254(i).

review the trial transcripts it can be said that Duran has never had an opportunity to present those claims fairly. Accordingly, they are reviewed here to adjudicate them if the determination of procedural default is reversed on appeal.

Jamie Duran and Doris Duran were married but separated in June, 2006. On the night of June 26, Ms. Duran drove to the marital home in Colorado Springs, Colorado, after working her shift as a Deputy Sheriff for El Paso County. Their relationship was contentious and she had obtained a protective order against Duran a few days earlier. She testified that when she got out of her car Duran, armed with a handgun, grabbed her by the arm, took her purse and forced her into his automobile, a Chevy Tahoe and drove south on Highway I-25. Fearful of being shot she said he would do anything he wanted. She said that he made her undress and perform oral sex. Duran drove about 60 miles to a remote location near Boone in Pueblo County.

The Colorado Court of Appeals described the following events.

> Defendant stopped the car at a dark location near Boone. The fearful victim said she would do anything. She suggested they could reconcile and feigned willingness to have sex. Defendant told the victim to get on top of him; when she said she was in pain, he told her to get in the back seat and masturbate. The couple then had intercourse, which the victim testified was not consensual.
>
> The Sheriff's Office called the victim's cell phone and pager. Defendant, seeing the numbers, expressed concern about being caught. The victim promised to lie and not tell anyone what had happened.
>
> Defendant began driving back and threw his gun (which was never found) over a bridge. The victim convinced him to stop at a convenience store for water. He went inside, leaving the keys in the ignition. The victim jumped in the driver's seat and sped home.

Ex. B.

The claims of ineffective assistance of trial counsel made in the Rule 35(c) motion are repeated in this Application. They are:

1. Ineffective assistance of trial counsel, in that:

    (a) Counsel should have introduced the police's gunshot residue (GSR) test of Applicant's hands;

    (b) Counsel should have investigated and introduced evidence related to the convenience store–specifically, the clerk's testimony and a surveillance video, to prove the victim had "relaxed body language" in the store;

    (c) Counsel should have sought a change of venue, which would have resulted in having courthouse security staff and a trial judge that did not "work for the same agency" as the victim;

    (d) Counsel should not have waived Applicant's presence for the first portion of a two-part hearing, because this prevented Applicant from telling counsel earlier to argue that the reason the defense was entitled to the victim's sheriff's office personnel file was that it would show she lied by not including a medical condition on her employment application;

    (e) Counsel should have requested that the trial court reiterate, in the *final* jury instructions, the other-acts-evidence limited-purpose instruction it read during trial;

(f) Even though it would have been inconsistent with the theory of defense, counsel should have requested that the jury be instructed on the lesser-included offense of second degree kidnapping, because the jury probably would have chosen this over first degree kidnapping;

(g) Counsel failed to cite case law that, Applicant claims, would have prevented the trial court from allowing the jury to find his sexual assault of the victim could satisfy the "concession" element of first degree kidnapping;

(h) Counsel failed to hire and present an expert to dispute the victim's and sex-assault nurse examiner's testimonies that the victim suffered "bodily injury" from the sexual assault;

(i) Counsel's above failures and failure to meet with Applicant more often results in cumulative prejudice.

The claims of ineffective assistance of appellate counsel are:

(a) Counsel should have argued that the trial judge "brought to bear an improper and extraneous influence on the jury" by mentioning, during a late-evening inquiry into whether the jury was deadlocked, that the daughter of one of the jurors was no longer in court day care and was being watched by the court's staff and

(b) Counsel should have argued that Applicant's sexual assault of the victim could not satisfy the "concession" element of first degree kidnapping, as argued in claim 1(g).

It is notable that the statement of the case by the appellate court incorrectly omitted the victim's testimony that both she and the defendant went into the convenience store and that she was seen by the store clerk, had access to a telephone and failed to make an outcry. Additionally, a security camera at the store would have shown her at the store and Duran had thrown the gun away off of a bridge before that stop. With that exception the summary is accepted as a statement of the evidence received at trial.

The failure of trial counsel to seek the testimony of the store clerk and to obtain the recordings from the security camera are one of the claims of ineffective representation.

As to that claim Judge Kennedy wrote the following:

Failure to investigate store clerk

> During the kidnapping, the defendant and victim stopped at a convenience store and went inside. At trial, the clerk did not testify and the record does not indicate whether his whereabouts were known. However, the victim did testify that when she entered the store she attempted to remain calm and that she did not alert the clerk to her circumstances. The testimony of the clerk would have corroborated the victim's testimony, and failure to call him as a witness does not indicate defense counsel was ineffective.

Ex. V.

There is nothing to support the assumption that the clerk's testimony would corroborate the victim's testimony and the judge did not mention the availability of a security camera recording. The applicant has not obtained a statement of the store clerk or any information as to what was seen on the videotape. Just as it may not be

assumed that this would be corroborative of the plaintiff's testimony, it may not be assumed that this was available exculpatory evidence.

A principal contention is that trial counsel failed to exploit the testimony of Detective Lassaso concerning a gunshot residue test performed on Duran's hands while he was being questioned in a videotaped interview. At the preliminary hearing Lassaso testified that the test he used was negative and could not have been re-tested professionally by the Colorado Bureau of Investigation crime lab. There was no record made of this test.

During the trial the court held a hearing on admitting the full recorded interview, excepting parts which had been edited out pursuant to earlier court orders. The defense lawyer said he saw part of the video for the first time and that part included administering the GSR test. Counsel claimed surprise and objected to that being shown to the jury because he had no discovery concerning the GSR test. By agreement that portion was deleted and the jury saw and heard Duran's interview tape but nothing about such a test was included.

The absence of a gun in evidence was argued to the jury. There had been an extensive search for a gun in the area identified by Mrs. Duran and for miles surrounding it with no success.

On this issue, Judge Kennedy wrote:

Failure to investigate GSR issue

> The Defendant first alleges that counsel failed to investigate GSR testing. At the time of arrest, a GSR test was completed which apparently was negative. Trial counsel did not independently investigate or conduct further testing. During trial, while discussing the use of the Defendant's video-taped statement, defense counsel requested that the court strike all

> reference to the GSR test.  Setting aside for a moment whether counsel's failure to conduct independent testing fell below the *Strickland* standard, the Defendant has failed to establish that but for the failure the outcome would have been different.  First, the GSR kit used by the detective apparently was not one which was capable of being tested by CBI, and nothing has been presented to indicate it could have been tested by a defense expert.  Second, there was no evidence that the gun was discharged, and the absence of GSR on the Defendant's hands does not indicate he did not handle the weapon.  <u>Third, and perhaps most importantly, the presence of a gun only related to whether the Defendant had committed a crime of violence.</u>  Because the jury found beyond a reasonable doubt that the Defendant had required the victim to make a concession in order to be released and had suffered bodily injury, a life sentence was mandatory, and the crime of violence finding was irrelevant.
>
> Ex. V, emphasis added.

The presence of a gun was a critical component of the victim's testimony.  It was the fear of being shot that caused her to appear to agree to the sexual acts and discuss reconciliation.  It was proof of the coercion element of the kidnapping charge.  The jury wrote the following note to the court during deliberation:

> "We agree that he is guilty of kidnapping but not of a gun being present.
> Can we still find him guilty of kidnapping."

By that question the jury showed concern about the presence or absence of a gun which was a critical issue affecting the credibility of the victim and an element of the crime of kidnapping.

Judge Kennedy assumed that the absence of GSR on the defendant's hands does not indicate he did not handle the weapon.  That contradicts Lassaso's testimony that the test may show the handling of a gun even if it had not been fired recently.

That does seem problematic and the Applicant has not shown the availability of an expert witness to testify that the negative result would support Duran's denial that he

had a gun. The failure to investigate these possibilities is beneath the standard of performance but it cannot be presumed that they would be helpful to the defense so no prejudice has been shown as required by *Strickland.*

The Applicant claims that trial counsel failed to request a limiting instruction in the final charge to the jury concerning prior acts evidence in the testimony of Monica Scott under Rule 404(b). The Colorado Court of Appeals ruled that allowing that evidence was error but held that it was harmless. The conclusion is questionable but this court must accept it. A limiting instruction was given when the evidence was received and it would have been prudent to repeat it in the final instructions but the failure to request it cannot support a finding that the outcome of the trial would have been different which is the basis for finding harmless error as well as ineffective assistance of counsel.

The claim of ineffective assistance in the failure of defense counsel to request an instruction on the lesser included offense of Second Degree Kidnapping was rejected by Judge Kennedy on no prejudice grounds given that the jury found two concessions made by the victim the existence of which separates first and second degree kidnapping. The theory of the defense was consent by the victim and it was acceptable trial practice to argue that without suggesting that the evidence might support a lesser crime. The Colorado Court of Appeals on direct appeal ruled that the jury was properly instructed on the element of concession and approved the verdict. This Court cannot speculate that the jury might have found second degree kidnapping as a compromise verdict because of a reasonable doubt about the presence of a gun.

The claim that counsel failed to make a correct legal argument as to the definition

of concession was within the Colorado Court of Appeals' approval of the jury instructions on direct appeal.

The failure to request a change of venue is said to have prejudiced the defendant at trial because the courthouse security staff was provided by the El Paso County Sheriff's Office and officers testified in uniform. The assumption is that the presence of these co-workers was implicit support for Deputy Duran. Part of the crime took place in Pueblo County which then would have been a proper venue. There is some merit to the suggestion of an improper influence but Duran has cited no precedent to support the claim that a change of venue would have been ordered.

The hearing regarding access to Deputy Duran's personnel records was on a motion to support a subpoena to the Sheriff for that production.

The trial court and appellate court reviewed the records *in camera* and found nothing relevant to the case. That is not dispositive in itself because the assertion that she failed to disclose a disqualifying condition in her application would help in determining her credibility and her interest in keeping her job. There is nothing in the record here to support the existence of a disqualifying medical condition.

The failure to retain an expert to testify that there was no bodily injury from the sexual assault has been asserted as another ground for finding ineffective assistance of counsel. The nurse conducting the physical examination testified that what she observed was consistent both with non-consensual and rough sex. The Applicant has not provided any proposed expert testimony to the contrary. Bodily injury is defined in C.R.S. § 18-1-901(3)(d) as "physical pain, illness, or any impairment of physical or mental condition." Sexual penetration can itself be bodily injury if there is pain and the

victim testified that it "really hurt" and she felt injured afterward. There is no merit to this claim.

As to the claims of ineffective assistance of appellate counsel it is argued that the trial court's inquiry concerning jury deadlock with the comment that the court's day care facility was closed with a juror's daughter being watched by court staff was undue influence on the jury which returned the verdict soon afterward on a Friday evening.

The juror with the child was certainly aware of the child's presence and it is reasonable to infer the other jurors were aware. The court explained that the jury was free to make the decision to return on Saturday or Monday to resume deliberations. An argument of jury coercion would not have been successful under these circumstances.

The other contention that appellate counsel should have raised the issue of sexual assault not being a concession for First Degree Kidnapping fails for the reason that the Colorado Court of Appeals approved the court's instruction on the elements of that crime.

There are two "prongs" to a claim of ineffective counsel under *Strickland v. Washington,* 466 U.S. 668 (1989). First, that counsel so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result and second, that counsel's deficient performance so prejudiced the defense as to deprive the defendant of a fair trial. Prejudice is shown "if there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

This was a difficult case to defend. The entire case depended on the credibility of the victim and her testimony. The failures that have been discussed could

cumulatively be considered deficient performance but the Applicant has failed to show prejudice.

For the reasons given, it is

ORDERED that the application is denied and the Clerk shall enter judgment dismissing this civil action.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(2) and (3) the Court finds that the applicant has made a substantial showing of denial of the Sixth Amendment right to effective assistance of trial counsel and that reasonable jurists may disagree on this Court's determination of procedural default.

DATED: August 10, 2017

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge